## M. S. HEDRICKS v. STEAMSHIP MORNING STAR AND OWNERS.

*A bill of lading is merely prima facie evidence, and parol testimony can be received to contradict or vary its contents.*
*Where a party selects one ship in lieu of another whereon to ship his goods, he cannot complain if they are lost, although his bill of lading was made out for that other.*

APPEAL from the Sixth District Court of New Orleans, *Duplantier,* J. *Whitaker, Fellows & Mills,* for defendants.

*B. Egan, for plaintiff and appellant.*—It is a well settled principle of law, that parol evidence is not admissible to contradict or vary the writ-

ten contract, or as to what may have been said before, since, or at the time of making it. The authorities on this point are quite numerous. See C. C. 2256; *Henderson* v. *Stone*, 1 N. S. 641; *Cook* v. *Parkarson*, 16 L. 129; *Arnou* v. *Davison*, 18 L. 43; *Hill* v. *Hall*, 4 R. 416; *Clark* v. *Slidell*, 5 R. 330; *Williams' Adm'r* v. *Garey Hood*, 11 A. 113; Angell on Common Carriers, 228–9; *James Knox* v. *Lidell*, 5 R. 111. In this last case the Court held that the Article 2256 of the C. C. was not confined to acts relative to the transfer of immovable property or slaves, or authentic acts.

In the case of *Stinson* v. *Schooner Pennsylvania*, 12 L. 332, this Court held " that a ship landing goods at an intermediate port, and shipping them on another vessel without the consent of the shippers, is liable for their loss.

And in a still later case, *Murrell* v. *Dixey*, 14 A. 299, this Court held " That the cargo of a vessel while in the port of New Orleans, where it had arrived by reason of a deviation occasioned by the unseaworthinesss of the vessel, was at the risk of defendants as insurers."

See also Angell on Common Carriers, §§ 175, 176, 177; Abbott on Shipping, 340; Parson's Mercantile Law, 348, 351.

Those authorities, we contend, show that it is a universal and well settled principle of law, and one recognized by this Honorable Court, that the least deviation on the part of the common carrier from the terms of the contract contained in the bills of lading, renders them liable to the shippers as insurers.

When an agent acts within the scope of his authority, his acts are binding on his principal. *Allord* v. *Allord*, 6 R. 320; 8 Wheaton, 338; 7 Cranch, 299.

Mr. Fuller, who signed the bill of lading, was the clerk of defendants and purser of the steamship Morning Star; he is shown to have signed other bills of lading for defendants. See the four bills of lading offered in evidence, all signed by him.

Now, if the plaintiff's bill of lading was not a good contract of shipment between him and the defendants, on the steamship Morning Star, we are unable to conceive how the defendants can pretend that it is a good contract of shipment between them and the plaintiff, by the steamship Electric Spark, when the bill of lading does not contain a word about any other vessel than the Morning Star.

It seems to us clear, that it is a contract of shipment by the steamer Morning Star, or no contract at all.

Where one or two innocent persons must suffer, he ought to suffer who has placed his property in the hands of a careless agent, rather than one who acts in good faith, and on his confidence in what the agent has done. 4 A. 19. 3 A. 400.

Corporations can only contract in writing, and parol evidence is inadmissible to contradict the writing. *Courtney et al.* v. *Miss. Marine and*

*Fire Insurance Co.* 12 L. 233.   See also the case of *Pontchartrain R. R. Co.* v. *Steirn*, 2 A. 129.

For these reasons, we think the judgment of the Court a quô ought to be reversed, and judgment rendered in favor of the plaintiff for the amount of his claim.

LABAUVE, J.   This suit is brought to recover of the defendants $1,255, the value of four boxes of merchandizes, received by them on the 9th July, 1864, to be shipped on board steamer Morning Star, from New York to New Orleans, and alleged not to have been delivered according to the bill of lading.

The answer contains, in substance, a general denial and averments that the bill of lading was not a contract of shipment intended for the Morning Star; that, on the 9th July, 1864, and for a considerable time immediately preceding and subsequent, the said steamship was not on the berth in the North River, at New York, receiving goods, but was at the dock in the East River, rebuilding; that there was no one authorized to receive freight and sign bills of lading; that the fact of her being out of the trade, and the Electric Spark replacing her between New York and New Orleans, was well known; that the said freight was actually delivered by plaintiff's agent to the steamer Electric Spark, in New York; that said steamer, on her way to New Orleans, was captured by Confederate cruiser Florida, and that, in consequence, the said freight was not delivered, without any fault of theirs.

The District Court, after hearing the testimony, gave judgment in favor of the defendants, and the plaintiff appealed.

On the trial below, the Court properly admitted parol evidence to contradict or vary the bill of lading, which was merely prima facie evidence.

The testimony shows that, at the date of the bill of lading, 9th July, 1864, the Morning Star was undergoing repairs in East River, and had been so for at least four weeks previously, and remained undergoing repairs there until September, 1864; that the Electric Spark took her place, and was advertised by the company to sail for New Orleans, on the 9th July, 1864; on this day she lay side of the company's wharf, in sight of every person who delivered goods for shipment; she had been advertised from June 28th, 1864, to the 9th July, inclusive, to sail from New York to New Orleans on the 9th July, 1864; she was so advertised in the Journal of Commerce, Commercial Advertiser, Evening Post, Daily World, New York Daily Times, and the New York Herald, for some eleven days previous to her sailing. From the 6th of June, 1864, to the 24th September, 1864, the Morning Star was not in a condition to go to sea. The bill of lading shows that the goods were to be shipped on the Morning Star. Previous to obtaining this bill of lading, plaintiff's agent in New York had obtained a permit to ship the goods by the Morning Star. The

Electric Spark was considered a very good, seaworthy vessel, but was not so fast and so large as the Morning Star.

After having carefully examined the testimony, we are of opinion that plaintiff's agent's consent was impliedly and constructively given to ship the goods on the steamer Electric Spark. This agent sent the goods to the steamer by his cart-man, who delivered them to the Electric Spark, in lieu of the Morning Star, the latter not being in port, of course, and the former occupying her place. The plaintiff's agent states in his testimony: "I delivered the goods, mentioned in the bill of lading, myself. I saw them delivered, and I actually delivered them; my cart-man received them." The delivery, then, of the goods to the Electric Spark, by his cart-man, was his own act, and binding on his principal. The bill of lading is dated 9th July, 1864, showing that the goods were delivered on the very day that the Electric Spark was to leave. She was captured at sea and destroyed, with her whole cargo, by the cruiser Florida.

We are of opinion that the defendants have satisfactorily accounted for the non-delivery of the goods to the plaintiff, and that, under the circumstances, they are not responsible. The case would be different, if the goods had been actually and really delivered to the Morning Star, and re-shipped by her on the Electric Spark.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.